DECISION
Defendant, David Norman moves this Court to dismiss this prosecution for possession of child pornography, based on the alleged unconstitutionality of the controlling statute, G.L. 1956 § 11-9-1.3. The State of Rhode Island objects to this motion and asks this Court to uphold § 11-9-1.3 as constitutionally sound. Jurisdiction is pursuant to Super. R. Crim. P. Rule 47.
 I Facts and Travel
Defendant was employed as an accountant by the Rhode Island Division of Taxation. He was given access to a Gateway laptop to use in his capacity as a Division of Taxation employee. He used this laptop until some point in 2004. In July of 2007, a Department of Administration Human Resources Administrator requested a forensic examination of the Gateway laptop for evidence of inappropriate or non-work related use by a different Division of Taxation employee (not the Defendant). During the course of this examination, a number of chat files were recovered from a laptop user chatting under the name "davidn2." Many of these chat files were sexually explicit in nature, and indicated that the individuals that "davidn2" was chatting with were underage females. *Page 2 
The timestamps on these chats indicated that they occurred from January 24, 2004, through February 13, 2004.
After discovering these particular chat files, the Department of Administration contacted the Rhode Island State Police, and turned over the Gateway laptop to the Computer Crimes Unit. Further forensic examinations were conducted on the laptop, which resulted in the discovery of approximately thirty-three chat files, each containing sexually explicit conversations with persons holding themselves out to be underage females, and approximately one hundred twenty-four images depicting prepubescent females, many of which depicted the graphic and lascivious exhibition of the child's genital area.
State Police Detectives then interviewed Defendant, who recalled the chat communications and confirmed that the screen name "davidn2" was his personal screen name. Defendant acknowledged the references to underage females in the chat communications, but described the activity as sexual fantasy and stated he had never met any of the individuals in person. On November 19, 2007, after confirming the internet history and email accounts used on the Gateway laptop directly correlated to Defendant's possession and control of the laptop, Defendant was charged with possession of child pornography in violation of § 11-9-1.3.
On August 8, 2008, Defendant moved to dismiss this case pursuant to Super. R. Crim. P. 9.1. In his supporting memorandum Defendant alleged: (1) the State could not establish knowing possession of the images; (2) there was no probable cause to believe the images seized are of real, identifiable minors; and (3) the State had failed to include *Page 3 
copies of the images in the information package. After careful review of the motion and supporting memoranda from both parties, this Court denied the motion.
On March 17, 2009, Defendant again moved to dismiss this case on the basis that § 11-9-1.3 is both unconstitutionally overbroad, and unconstitutionally vague, in violation of the United States and Rhode Island Constitutions. After careful examination of the motion and supporting memoranda from both parties, this motion is now ripe for decision.
 II Analysis A First Amendment Overbreadth
Generally, "a person to whom a statute may constitutionally be applied" may not challenge the statute on the ground that it has some conceivably unconstitutional application. Broadrick v.Oklahoma, 413 U.S. 601, 610 (1973). However, the overbreadth doctrine represents a deviation from this traditional rule. The overbreadth doctrine allows a statute to be challenged if, in proscribing unprotected speech, it also proscribes "a substantial amount of protected speech." United States v.Williams, 553 U.S. ___, 6 (2008), 128 S.Ct. 1830 (emphasis added); see also New York v. Ferber,458 U.S. 747, 767 (1982); Broadrick v. Oklahoma,413 U.S. 601, 610 (1973); United States v. Raines,362 U.S. 17, 21 (1960); Carmichael v. Southern Coal CokeCo., 301 U.S. 495, 513 (1937); Yazoo M.V.R. Co. v. JacksonVinegar Co., 226 U.S. 217, 219-20 (1912). Courts have repeatedly justified the overbreadth doctrine due to the great value Americans place on freedom of speech. See Ferber,458 U.S. at 768-69 (quoting Village *Page 4 of Schaumburg v. Citizens for a Better Environment,444 U.S. 620, 634 (1980); Gooding v. Wilson,405 U.S. 518, 521 (1972)). Accordingly, the risk that a person "`may refrain from exercising their right [to constitutionally protected speech] for fear of criminal sanctions'" is simply too great to bear. Id.
As recently as 2008, in United States v. Williams, the United States Supreme Court considered an overbreadth challenge to a statute that criminalized the pandering of child pornography, regardless of actual possession. 553 U.S. at 6. The Court emphasized the importance of reserving the doctrine's application for cases where a statute's overbreadth is substantial.Id. (emphasis added). The Court explained:
 The [overbreadth] doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional — particularly a law directed at conduct so antisocial that it has been made criminal — has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. Invalidation for overbreadth is strong medicine that is not to be casually employed. 553 U.S. at 6 (internal citations omitted) (internal quotations omitted).
In keeping with this principle, overbreadth analysis follows a two part inquiry. First, the court must determine what the statute covers, so that, second, the court can determine whether the statute "criminalizes a substantial amount of protected expressive activity." Williams, 553 U.S. at 11. Thus, this Court now turns to the interpretation of § 11-9-1.3. *Page 5 
 1 Interpretation of G.L. 1956 § 11-9-1.3
Section § 11-9-1.3 criminalizes the knowing possession of "any book, magazine, periodical, film, videotape, computer disk, computer file or any other material that contains an image of child pornography." Section 11-9-1.3 (4). In subsection (c), the statute defines child pornography as follows:
 (1) "Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where:
 (i) The production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
 (ii) Such visual depiction is a digital image, computer image, or computer-generated image of a minor engaging in sexually explicit conduct; or
 (iii) Such visual depiction has been created, adapted, or modified to display an identifiable minor engaging in sexually explicit conduct. Section 11-9-1.3(c) (emphasis added).
Made clear by the above statutory language, to constitute child pornography, a depiction must portray a minor engaging insexually explicit conduct. The statute defines "sexually explicit conduct" as:
 (i) Graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, or lascivious sexual intercourse where the genitals, or pubic area of any person is exhibited;
 (ii) Bestiality;
 (iii) Masturbation;
 (iv) Sadistic or masochistic abuse; or
 (v) Graphic or lascivious exhibition of the genitals or pubic area of any person. Section 11-9-1.3(c)(6) (emphasis added). *Page 6 
Under the statute, a "[g]raphic or lascivious exhibition of the genitals or pubic area of any person" constitutes sexuallyexplicit conduct, the presence of which is essential for a depiction to constitute child pornography. Section 11-9-1.3(c)(6)(v). Furthermore, because the statute uses the disjunctive "or," a graphic exhibition and a lascivious exhibition are separate and distinct categories of sexually explicit conduct. At issue in this case is the criminalization of a "graphic exhibition of the genitals or pubic area," as contained in subsection (c)(6)(v). Graphic is defined in subsection (c)(8) as meaning "a viewer can observe any part of the genitals or pubic area of any depicted person or animalduring any part of the time that the sexually explicit conduct isbeing depicted." Section 11-9-1.3(c)(8) (emphasis added). This definition is undoubtedly circular — in defining sexually explicit conduct, the statute uses the term graphic, yet in defining the term graphic, the statute refers back to sexually explicit conduct.
The principle maxim of statutory interpretation requires that a statute be construed literally. I.N.S. v. Cardoza-Fonseca,480 U.S. 421 (1987); Chamber v. Ormiston,935 A.2d 956 (R.I. 2007). However, when the literal meaning is unclear, as is the case here, this Court must discern whether this ambiguity can be solved by resort to the traditional canons of statutory construction. There are several doctrines of statutory construction to which both the Rhode Island Supreme Court, as well as the United States Supreme Court, commonly resort. UnitedStates v. Williams, 553 U.S. ___ (2008); Chamber v.Ormiston, 935 A.2d 956 (R.I. 2007). The first of these doctrines is noscitur a sociis, which roughly translates to "it is known from its associates." 2A Norman J. Singer J.D. Shambie Singer,Sutherland Statutes and StatutoryConstruction § 47:16 (7th ed. 2007). Noscitur a sociis
provides: "[i]f the legislative intent or meaning of a statute is not clear, the *Page 7 
meaning of doubtful words may be determined by reference to their relationship with other associate words and phrases." Id.
According to Sutherland's Statutory Construction, "when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word." Id. In essence, "a word may be defined by an accompanying word, and ordinarily the coupling of words denotes an intention that they should be understood in the same general sense." Id.
In the instant case, § 11-9-1.3(c)(6)(v) couples the more general word, "graphic," with the more specific word, "lascivious."Black's Law Dictionary defines lascivious as "tending to excite lust; lewd; indecent; obscene."Black's Law Dictionary 960 (9th ed. 2009). Thus, a lascivious exhibition of the genitals or pubic area must be indecent or obscene in nature. It must have some sexually explicit aspect that a picture of a child in a bathtub simply does not. This Court acknowledges that it may be difficult to articulate precisely what this sexually explicit aspect would entail. As a case in point, this Court refers to Justice Potter Stewart's oft-quoted remark, "I know it when I see it." Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J. concurring) (referring to attempts to define what constitutes "hard-core pornography").
Ordinarily the doctrine of noscitur a sociis would allow this Court to interpret "graphic" in the context of lascivious. As explained above, when two words are coupled together, it reflects a legislative intent that the words "should be understood in the same general sense." Thus, a "graphic depiction" would require some sexually explicit aspect in addition to the graphic exhibition of the genitals or pubic area. Singer,supra, at § 47:16. However, the term "graphic" wasn't in the original text of the statute. When the *Page 8 
statute was first enacted in 2001, the analogous subsection simply read: "lascivious exhibition of the genitals or pubic area of any person." P.L. 2001, Ch. 143, § 1(c)(2)(v). In 2004, the Rhode Island General Assembly amended § 11-9-1.3(c)(6)(v)[1]
and subsection (c)(7) to include the term "graphic." In adding "graphic" and separating it from lascivious by using the disjunctive "or," the legislature clearly intended to expand the definition of sexually explicit conduct. See P.L. 2004, Ch. 586, § 2; P.L. 2004, Ch. 612, § 2.[2]
Applying noscitur a sociis to this subsection would render the term "graphic" essentially meaningless. When read in the context of lascivious, graphic simply serves as a reiteration and brings nothing new to the table. Under the traditional canons of statutory construction, "[w]ords may be eliminated only when such action is consistent with the legislative intent or meaning." Singer, supra, at § 47:16. Given that "graphic" was specifically added to the statute three years after its original enactment, this Court cannot possibly find that the legislature did not intend for it to be there. Thus, graphic must be read as a separate and distinct category of "exhibition of the genitals or pubic area." Section 11-9-1.3(c)(6)(v).
Construing "graphic exhibition of the genitals or pubic area" as a category separate and distinct from lascivious exhibitions, it becomes clear that this section criminalizes at least some constitutionally protected speech. An innocent picture of a child in a bathtub, or images in a medical textbook, could contain a graphic display of a *Page 9 
child's genitals, yet no rational person would consider it to be pornographic. Thus, the Court must now turn to the second prong of the overbreadth test articulated in Williams, and determine whether § 11-9-1.3 prohibits a substantial amount of protected speech.
 2 Substantial Overbreadth
In Broadrick v. Oklahoma, the seminal Supreme Court case on the overbreadth doctrine, the Court emphasized that "where conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."413 U.S. 601, 615 (1972). The Court reasoned that even though such statutes may deter constitutionally protected speech to some (unknown) extent, "there comes a point where that effect — at best a prediction — cannot . . . justify invalidating a statute on its face and so prohibiting a State from [regulating] conduct . . . within its power to proscribe."Id. Thus, invalidating a statute on overbreadth grounds is "manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." Id. at 613.
Although Supreme Court jurisprudence instructs on the manner with which to apply the overbreadth doctrine, it sheds little light as to how to determine whether overbreadth is substantial. However, the United States Supreme Court has previously considered four similar cases involving overbreadth challenges to child pornography statutes. Thus, this Court can gain guidance by looking to such analogous cases.
In 1982, the Supreme Court first considered an overbreadth challenge to a statute specifically directed at dissemination of child pornography. The question presented in New York v.Ferber was whether, consistent with the First Amendment, a state could *Page 10 
"prohibit the dissemination of material which shows children engaged in sexual conduct, regardless of whether such material is obscene."458 U.S. 747, 753 (1982). As a preliminary matter, the Court found it "evident beyond the need for elaboration that a State's interest in `safeguarding the physical and psychological well-being of a minor' is `compelling.'" Id. at 756-57 (quoting GlobeNewspaper Co. v. Superior Court, 457 U.S. 596, 607 (1982)). Considering that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child," the legislative judgment to prohibit distribution of such materials "easily passes muster under the First Amendment." Id. at 758. As a result, the Court found that "a State has somewhat more freedom in proscribing works which portray sexual acts or lewd exhibitions of genitalia by children."Id. at 753.
Challengers to the statute at issue in Ferber insisted the statute was overbroad "because it would forbid the distribution of material with serious literary, scientific, or educational value or material which does not threaten the harms sought to be combated by the state." Id. at 766. While the Ferber Court ultimately held that the New York statute was not substantially overbroad, the Court did state that Ferber was "the paradigmatic case of a state statute whose legitimate reach dwarfs its arguably impermissible applications." Id. at 773. In the event the statute is "sought to be applied against protected conduct[,]" rather than invalidating the statute as a whole, the proper remedy is "to reverse the particular conviction."Id. (citing Cantwell v. Connecticut,310 U.S. 296 (1940); Edwards v. South Carolina,372 U.S. 229 (1973)).
Seven years after New York v. Ferber, the Supreme Court heard another overbreadth challenge directed at a child pornography statute. In Osborne v. Ohio, the *Page 11 
question presented was "whether Ohio may constitutionally proscribe the possession and viewing of child pornography."495 U.S. 103, 108 (1990). This was another novel question for the Court, as Ferber dealt with dissemination of child pornography, and left open the legality of mere possession. The petitioner in Osborne challenged the Ohio statute on privacy grounds, and argued that under Stanley v. Georgia, he had the right "to receive information in the privacy of his home."394 U.S. 557, 564-568 (1969).[3] However, the Court cautioned that Stanley was a narrow holding, based primarily on Georgia's weak justification for prohibiting private possession of obscenity — "its concern that obscenity would poison the minds of its viewers." Osborne, 495 U.S. at 109 (citingStanley, 394 U.S. at 565). In contrast, "the value ofpermitting child pornography [is] exceedingly modest, if notde minimis." Id. (quoting Ferber, 458 U.S. at 762) (internal quotations omitted) (emphasis added). Thus,Stanley is easily distinguished as "the interests underlying child pornography prohibitions far exceed the interests justifying the Georgia law at issue in Stanley." Id.
In upholding the Ohio statute, the Osborne Court reasoned that prohibiting possession of child pornography decreases demand for child pornography, which in turn helps to combat its production.Osborne, 495 U.S. at 109-10. Noted the Osborne Court, "[g]iven the importance of the State's interest in protecting the victims of child pornography, we cannot fault Ohio for attempting to stamp out this vice at all levels in the distribution chain."Id. Additionally, the Ohio statute contained an "exemptions and proper purposes provision," which excepted material with a legitimate, non-pornographic *Page 12 
purpose. Id. at 112 n. 9. Thus, the Court surmised that the statute was likely not overbroad, although it never formally reached that determination.[4]
Twelve years after Osborne, in 2002, the Supreme Court considered yet another overbreadth challenge to a child pornography statute. In Ashcroft v. Free Speech Coalition,535 U.S. 234 (2002), the federal statute at issue — the Child Pornography Prevention Act of 1996 ("CPPA") — prohibited so-called "virtual child pornography." The statute prohibited possessing or distributing "sexually explicit images that appear to depict minors but were produced without using any real children."Id. at 239. Virtual child pornography may be created using "adults who look like minors," or "computer imaging," which enables the creation of "realistic images of children who do not [actually] exist." Id.
While both Ferber and Osborne justified states' freedom to proscribe all aspects of child pornography as a means to protect children against sexual exploitation, Ashcroft held that protecting against child exploitation cannot justify the prohibition of "virtual child pornography," as no actual children are involved in its production. Thus, the question presented to the Court in Ashcroft was "whether the CPPA is constitutional where it proscribes a significant universe of speech that is neither obscene under [Miller v. California] . . . nor child pornography under Ferber." Ashcroft, 535 U.S. at 240. The Court held the statute unconstitutional, finding that "the provision abridges the freedom to engage in a substantial amount of lawful speech." Id. at 256. Because "the CPPA prohibits speech that records no crime and creates no victims by its production . . . *Page 13 
[v]irtual child pornography is not `intrinsically related' to the sexual abuse of children," as required to justify its prohibition.Ashcroft,535 U.S. at 250 (quoting Ferber, 458 U.S. at 759).[5]
Most recently, in United States v. Williams, the Supreme Court yet again considered a challenge to a child pornography statute. After the decision in Ashcroft was handed down, Congress passed the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("the Act").Id. at 3. The Act's "pandering and solicitation" provision criminalizes pandering of child pornography, regardless of actual possession. 18 U.S.C. § 2252A(a)(3)(B). "Generally speaking, [the Act] prohibits offers to provide and requests to obtain child pornography. The statute does not require the actual existence of child pornography." Id. at 7-8. "Rather than targeting the underlying material, this statute bans the collateral speech that introduces such material into the child-pornography distribution network." Id. at 8.
In determining whether the Act criminalized a "substantial amount of protected expressive activity," the Court noted that "[o]ffers to engage in illegal transactions are *Page 14 
categorically excluded from First Amendment protection."Williams, 553 U.S. at 11 (citing Pittsburgh PressCo. v. Pittsburgh Comm'n on Human Relations,413 U.S. 376, 388 (1973); Giboney v. Empire Storage Ice.Co., 336 U.S. 490, 498 (1949)). The Court further noted that the presence of a scienter requirement in the Act served to remedy potential overbreadth: "[a] crime is committed only when the speaker believes or intends the listener to believe that the subject of the proposed transaction depicts real children."Id. at 17. Based on these reasons, the Court held that "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment," and the Act is thereby constitutional. Id. at 13.
In three out of the four cases in which the Supreme Court considered overbreadth challenges to child pornography statutes, the statute at issue was upheld as constitutionally sound. Notably,Osborne v. Ohio instructs us that "[e]ven where a statute at its margins infringes on protected expression, "facial invalidation is inappropriate if the `remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'" Osborne,495 U.S. at 112 (quoting Ferber, 458 U.S. at 770, n. 25). Thus, where overbreadth does not clearly outweigh a statute's constitutional reach, overbreadth should be cured on a case-by-case basis. Ferber, 458 U.S. at 774;Broadrick, 413 U.S. at 615.
During the time Defendant's motion was pending, this Court specifically requested the parties to brief the issue of what degree of infringement was necessary to render a statute substantially overbroad. Defendant, while maintaining that the statute at issue is "clearly and substantially overbroad", did acknowledge that "there is no *Page 15 
mechanical test to establish a substantial infringement over overbreadth." [Def.'s Supp. Mem. 1.]
The instant case can be clearly analogized to New York v.Ferber, where the Court stated: here is "the paradigmatic case of a state statute whose legitimate reach dwarfs its arguably impermissible applications." Id. at 773. There is no doubt that this Court is troubled by the circular and unclear aspects of § 11-9-1.3(c)(8) (the definition of "graphic"). However, when measured against the statute's plainly legitimate scope — images depicting children engaging in graphic sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area — the infringement on constitutionally protected speech is marginal, at best. Such marginal infringement, if it indeed comes to pass, should thus be dealt with on a case-by-case basis, where the proper remedy will be to reverse the particular conviction, rather than "invalidate the law in toto." Id.
 B Vagueness
In addition to unconstitutional overbreadth, Defendant argues that § 11-9-1.3 is unconstitutionally vague. The alleged vagueness lies in the verb "store" in subsection (c)(7), and the words "graphic or lascivious" in subsection (c)(6)(v).
The vagueness doctrine, rooted in the Due Process Clause of the Fifth Amendment, rests upon three essential values. First, it serves to ensure that statutes are sufficiently clear, so that "a person of ordinary intelligence" receives "fair notice of what is prohibited."Williams, 553 U.S. at 18. In State v. Authelet, our Supreme Court cautioned, "[i]f a criminal act is set forth in a statute in uncertain terms, the innocent may *Page 16 
be trapped by inadequate warning of what the state forbids."120 R.I. 42, 45, 385 A.2d 642 (R.I. 1978) (citing State v.Picillo, 105 R.I. 364, 252 A.2d 191 (R.I. 1969)). Second, when laws provide "explicit standards for those who apply them," the danger of discriminatory enforcement is alleviated. Grayned v.City of Rockford, 408 U.S. 104, 109 (1972). Vague laws perpetuate "arbitrary and discriminatory enforcement" by delegating basic policy decisions to "policemen, judges, and juries for resolution on an ad hoc and subjective basis." Id. Thirdly, the vagueness doctrine serves to maintain uninhibited exercise of First Amendment freedoms. "Where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms," citizens are likely to "steer far wider of the unlawful zone" than necessary, impinging on protected speech. Id.
(internal quotations omitted).
Turning to the case at hand, Defendant points first to the use of the verb "store" in subsection (c)(7) as unconstitutionally vague. The American Heritage Dictionary defines store as "to reserve or put away for future use," and in the computer science context, "to copy (data) into memory or onto a storage device, such as a hard disk." Defendant argues that "there is no evidence of any intent [on the Defendant's part] to preserve the images or to save them for later use or disposal." [Def.'s Mem. 8.] This may be true, however, it is unrelated to the alleged vagueness of the statute. The definition of store, either to copy into memory or to put away for future use, is clear. The issue Defendant is arguing is a question of fact for the jury to decide: did Defendant intentionally store such images? Furthermore, the subsection of § 11-9-1.3 at issue reads: "Visual depiction" includes undeveloped film and videotape and data stored on a computer disk or by electronic means, which is capable ofconversion into a visual image." Section 11-9-1.3(c)(7) *Page 17 
(emphasis added). A reasonable reading of that subsection could conclude that the storage is sufficient as long as the data is capable of conversion into a visual image. Regardless of the specific interpretation, as Defendant has not argued why the use of the verb "store" is unconstitutionally vague, we need not reach a determination.
Secondly, Defendant argues that the statute's definition of "sexually explicit conduct," in part, as a "graphic or lascivious exhibition of the genitals or pubic area of any person," is also unconstitutionally vague. As discussed above in the overbreadth context, the use of the word "graphic" is arguably unclear. However, judging the statute as a whole, and particularly the clarity with which the other four types of sexually explicit conduct are defined, this Court does not think the use of the term "graphic" is unconstitutionally vague. The language is sufficient to put a person of ordinary intelligence on notice of what conduct is illegal, and therefore, the subsection at issue is not unconstitutionally vague.
 CONCLUSION
For the reasons set forth above, this Court finds § 11-9-1.3 constitutionally sound and hereby denies Defendant's motion to dismiss.
[1] The 2002 Reenactment rearranged and redesignated the definitions in subsection (c).
[2] P.L. 2004, Ch. 586, § 2 and Ch. 612, § 2 enacted identical amendments to this section and represent the passage of House Bill (04-H-7751B) (Effective July 31, 2004), and Senate Bill (04-S-3215A) (Effective August 11, 2004) respectively. Given that the Defendant used the laptop until some point in 2004 (Supra, p. 1 at Section I), the effective dates of amendment are set forth insofar as they may be relevant to any further analysis of the instant matter. Neither side has focused on this nuance thus far.
[3] Stanley v. Georgia held that the First Amendment prohibited criminalizing mere possession of obscene material.
[4] The Osborne Court followed the Ohio Supreme Court's reading of the statute, prohibiting: "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged."Osborne,495 U.S. at 113 (quoting37 Ohio St. 3d, at 252, 525 N.E. 2d, at 1368).
[5] This Court is aware of the different opinions throughout the travel of the Ashcroft case, which originally began as a civil pre-enforcement challenge to the CPPA seeking declaratory and injunctive relief. Senior District Judge Samuel Conti originally granted the government's motion for summary judgment, but was thereafter reversed by the Ninth Circuit Court of Appeals.See Free Speech Coalition v. Reno,1997 WL 487758 (overruled by Free Speech Coalition v. Reno,198 F.3d 1083 (1999)). As noted above, the United States Supreme Court ultimately upheld the Court of Appeals decision. Given the nature of the proceeding — declaratory and injunctive relief, a determination on the issue of whether any overbreadth was substantial was necessary in order to properly arrive at a conclusion on the matter.
That necessity may not exist in the case of a criminal prosecution. Given that the statute's scope encompasses a wide universe of proscribed materials, and there does not appear to be a mechanical test used to establish a quantification of overbreadth, it makes little sense to strike down an entire statute, or even a portion thereof, in response to a facial attack when potential difficulties can be remedied in future cases through fact-specific, as-applied challenges. "When we follow our traditional practice of adjudicating difficult and novel constitutional questions only in concrete factual situations, the adjudications tend to be crafted with greater wisdom. Hypothetical rulings are inherently treacherous and prone to lead us into unforeseen errors; they are qualitatively less reliable than the products of case-by-case adjudication."Ferber, 458 U.S. at 781 (Stevens, J. concurring). Deciding constitutional questions in the abstract is a recipe for making bad law.