252 A.2d 191.

STATE *vs.* WARREN VINCENT PICILLO.

APRIL 14, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is an application for a writ of habeas corpus which, for reasons that are apparent from the travel of the case, we have treated as a petition for a writ of certiorari.

The petitioner, hereinafter referred to as defendant, was indicted by a Kent county grand jury for an alleged violation of G. L. 1956, §11-19-18,[1] referred to, in the vernacular, as the common gambler statute. The case was tried to a superior court justice and a jury which returned a verdict of guilty. The record certified in accordance with our writ indicates that the case was called ready for trial on June 19, 1967. At this point, defendant's counsels made the following motion:

> "Now comes the defendant, through his attorneys, and declares that Title 11-19-18 of the General Laws of Rhode Island (1956) and generally known as 'Common Gambler' statute, be declared unconstitutional in that it is too vague, too general to indicate what persons are included or what acts are prohibited."

---

[1]The statute in question provides:

"Every person who shall keep or suffer to be kept any building, room, booth, shed, tent, arbor, or any other place, or any automobile, bus, coach, van, truck, trainer, railway or railroad car, or any other vehicle in any city or town of this state, or in any vessel, boat or raft upon any of the waters of Narragansett bay, to be used or occupied for the purpose of gambling, or playing at any game or games of chance of any kind whatsoever, for money or other valuable consideration, or shall keep, exhibit, or suffer to be kept or exhibited upon his premises or in his vehicle or under his control, any cards, dice, table, bowls, wheel of fortune, shuffleboard, or billiard table, or any device, implement or apparatus whatsoever to be used in gambling or playing at any game or games of chance for money or other valuable consideration, or who shall be guilty of dealing faro, or banking for others to deal faro, or acting as lookout, gamekeeper or assistant for the game of faro or any other banking game where money or property is dependent on the result, shall be taken and held to be a common gambler and shall be imprisoned not exceeding two (2) years or be fined not exceeding five thousand dollars ($5,000) nor less than five hundred dollars ($500)."

The trial justice reserved decision thereon and a jury was impaneled. The following morning before the jury was brought in, the trial justice announced that he had reached a decision as to the constitutionality of the challenged statute and thereupon proceeded to state his reasons for holding the statute to be constitutional. He concluded his decision with the statement that defendant's exception thereto was noted for the record.

The case then proceeded to trial and resulted in a verdict of guilty. The defendant thereafter seasonably moved for a new trial, which motion was denied and a sentence of one year imposed. Thereafter, within 30 days, defendant claimed an appeal pursuant to superior court rules of civil procedure, rule 73. He did so in the mistaken belief that said rules were applicable to criminal cases as well as civil actions. Having adopted this course, he did not, as the practice in this state requires, give notice within seven days of the denial of his motion for a new trial, of his intention to prosecute a bill of exceptions. General laws 1956, §9-24-17, as amended. Upon learning that his appeal was ineffectual, he filed a motion in this court, seeking permission to prosecute a bill of exceptions out of time. On December 12, 1967, that motion was denied, this court lacking jurisdiction to grant it. *Stanton* v. *Hawkins*, 41 R. I. 501, 103 A. 229.

Thereafter, on December 18, 1967, defendant filed in the superior court a motion which, averring that defendant's motion filed on the first day of trial sought in the alternative to have the trial justice either declare §11-19-18 unconstitutional or certify the question of constitutionality to the supreme court, now sought the certification of the constitutional question to this court. In addition to the averment that defendant's original motion was in the alternative, the December 18 motion asserted that certifica-

tion of the question to this court was mandatory under §12-22-10.[2]

This latter motion was heard by the superior court justice who presided at the trial. He concluded, in effect, that he lacked jurisdiction to grant the motion and defendant's remedy was by way of appropriate post-conviction relief. So concluding, he denied the motion, and defendant applied to this court for a writ of habeas corpus.

When that application was considered by this court, we concluded, in the interest of orderly procedure, that said application should be treated as a petition for certiorari, which, should that writ issue, would result in bringing to this court the records of the superior court pertaining to the question of certification. Accordingly, we issued a show cause order to the attorney general. That officer's reply was such as to persuade us that the writ should issue. The cause was then assigned for hearing on oral arguments and briefs.

At that hearing, substantial argument was devoted by defendant and the state on the merits of the trial justice's denial of the December 18, 1967 motion. Because we have concluded, out of an abundance of caution for defendant's rights that this court should reach the ultimate constitutional issue, we see no reason, in the special circumstances of this case, to consider the merits of the procedural question.

---

[2]This section provides:

"Whenever the constitutionality of any act of the general assembly shall be brought in question in the trial of a criminal cause in any court, the decision of the question shall be reserved, and the trial of the case in other respects shall proceed as if the statute were constitutional; and if the defendant shall be found guilty, sentence shall be stayed, and the constitutional question raised, together with a record of the case, and a transcript of the testimony, or so much thereof as pertains to the constitutional question, shall be certified and transmitted forthwith to the supreme court for decision."

This brings us, then to a consideration of defendant's contention that §11-19-18 is unconstitutional in that it is violative of the due process guarantees of art. I, sec. 10 of the Rhode Island constitution and art. 14 of amendments to the constitution of the United States. This contention is founded on the proposition that the statute in question is so vague and indefinite as to fail to give defendant, as a person of ordinary intelligence, fair notice that his alleged conduct was proscribed, citing *Bouie* v. *City of Columbia,* 378 U. S. 347, 84 S. Ct. 1697, 12 L. Ed.2d 894. That a legislative declaration of what conduct will constitute a crime must conform to the standard for which defendant contends is not open to question. However, in applying such standard to the statute in the case at bar, defendant misconceives its clear import. The statute imposes penal sanctions on one convicted of being a common gambler and clearly delineates three courses of conduct, each of which, in the wisdom of the general assembly, is so contrary to public policy as to constitute a person convicted thereof as a common gambler, quite apart from any question of whether such person was guilty of gambling. *State* v. *Melville,* 11 R. I. 417.

As noted by the trial justice in upholding the constitutionality of the statute when passing on defendant's original motion, the first such prohibited conduct is the keeping or suffering to be kept of any building or other specifically designated quarters to be used or occupied for the purposes of gambling for money or any other valuable consideration. The second prohibition is against the keeping, exhibiting or suffering to be kept or exhibited in his quarters or under his control of several specifically named items or any other devices, implements or apparatus *to be used* in gambling or playing at games of chance for money or other valuable consideration. (italics ours)

There is also the third course of conduct which, if in-

dulged in, subjects an accused to be held as a common gambler. However, an examination of the indictment in the case at bar discloses that such third course is not set forth as conduct with which defendant was accused. This being so, we are not here concerned with any alleged invalidity of that portion of the statute, defendant not being affected thereby. It is fundamental that one who challenges the constitutionality of an act of the legislature must show that the act is unconstitutional as to him. *King* v. *Williamson*, 103 R. I. 640, 240 A.2d 408.

Nevertheless, defendant argues that as to the first prohibited course of conduct set forth in the challenged statute, such words or phrases as "gambling," "playing," "games of chance," "other valuable consideration" and "to be used or occupied" lend themselves to such uncertainty as to lack the definiteness that due process requires. In this connection, defendant refers our attention to 39 McKinney's Consolidated Laws of N. Y. Ann. §225.00, where it appears that the New York legislature, in its wisdom, has seen fit to provide legislative definitions for such words and phrases as those which heretofore set forth, defendant challenges as vague and indefinite. Legislative definitions are, of course, within the prerogative of such bodies but are by no means essential to giving validity to the language which the legislature employs in setting out conduct which it believes to be contrary to the public health, safety, morality or welfare. Lacking legislative definition, the test is whether the language used is commonly understood by persons of ordinary intelligence. Applying this yardstick to the statute in question, we are unable to agree with defendant's contention that such terms as "gambling," "playing," "games of chance," "other valuable consideration" and "to be used or occupied" are so vague and indefinite as not to be comprehended by a person of ordinary understanding.

Nor do we have difficulty in disposing of defendant's

remaining contention, namely that the language used in stating the second prohibited course of conduct is open to the construction that mere possession of certain otherwise innocent articles is criminal. This contention completely ignores the legislative use of the words " * * * to be used in gambling or playing at any other game or games of chance for money or other valuable consideration * * *." Thus, contrary to defendant's contention, the mere possession of playing cards in one's home, to be used in a friendly game of bridge, where stakes are not involved, would not run afoul of the legislative language under attack.

We hold then, as to this defendant, the provisions of §11-19-18 are not so vague and indefinite as to be violative of the constitutional guarantees of due process.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone*, Attorney General, *Richard J. Israel*, Assistant Attorney General, *Donald P. Ryan*, Assistant Attorney General, for plaintiff.

*Pasquale T. Annarummo, Joseph D. Accardi*, for defendant.