DECISION
This is an appeal from a decision of the Barrington Zoning Board of Review (the Board). Carlen P. Booth and his wife, Joan T. Booth, (appellants) seek reversal of the Board's recorded decision of July 1, 1997, denying their application for a special use permit to unmerge their nonconforming lots, a special use permit to construct a residence in a Wetlands Overlay District, a dimensional variance for insufficient frontage, and a dimensional variance for building within one hundred feet of a wetland. Jurisdiction of this Court is pursuant to G.L. 1956 §45-24-69.
 FACTS AND TRAVEL
In 1978, the appellants purchased a parcel of land in Barrington, Rhode Island, specifically referred to as Lot 27 on Assessor's Plat 35. In 1979, the appellants obtained approval from the Town of Barrington to subdivide the parcel into two lots which came to be referred to as Lots 140 and 226 on Assessor's Plat 35. At the time the parcel was subdivided, the land was zoned R-10, and both the new lots met the required area of 10,000 square feet for a single-family home. Lot 140 then measured 12,000 square feet, and Lot 226 measured 45,600 square feet. Shortly after acquiring subdivision approval, appellants built a house on Lot 140, where they currently reside. Lot 226 remains undeveloped.
In 1986, the Town of Barrington adopted a zoning ordinance that included a provision for merger of substandard lots under the same ownership. The merger provision is presently found in § 185-26 and provides that
 "Where land adjacent to a substandard original lot is owned by the owner of said substandard original lot or his or its affiliate, the exemption of § 185-25 shall not apply, and said substandard original lot shall be combined with said adjacent land to establish a lot or parcel having at least the required minimum dimensions and area set forth in Article VI8 for the applicable district."
Under the current ordinance, Lots 140 and 226 are located in a R-25 District, which requires lots to have a minimum area of 25,000 square feet for a single family dwelling. See Dimensional Regulation Table 185-17 of the Town of Barrington Zoning Ordinances. Since Lot 140 is only 12,000 square feet and the two lots are under common ownership, Lots 140 and 226 have merged by operation of law pursuant to the merger provision of § 185-26.
On May 20, 1997, the appellants filed an application for a dimensional variance for insufficient frontage and for being within one hundred feet of a wetland, a special use permit for a Wetland Overlay District, and a special use permit to unmerge Lots 140 and 226. At a properly advertised hearing on June 19, 1997, the Board heard the applicants' application for the variances and special use permits regarding the property in question. Following the hearing, the Board unanimously voted to deny the application for a special use permit to unmerge Lots 140 and 226. A written decision of the denial of the appellants' application was issued on July 1, 1997. In its written decision, the Board made the following findings of fact:
 "The applicants had failed to sufficiently demonstrate the following with regard to the proposed use and its location on the site;
 (A) that the public convenience and welfare will be substantially served;
 (B) that it will be in harmony with the general purpose of this ordinance and with the Comprehensive Community Plan;
 (C) that it will not result in or create conditions that will be inimical to the public health, safety, morals, and general welfare of the community; and
 (D) that it will not substantially or permanently injure the appropriate use of the property in the surrounding area or district."
On July 16, 1997, the appellants filed a timely appeal of the Board's decision to this Court. In the complaint, appellants assert that the Board's decision was arbitrary and capricious and that they will suffer immediate, ongoing, and an irreparable injury as the result of the Board's decision for which there is no adequate remedy at law. Specifically, appellants assert that the Board failed to make clear findings as to which lots constituted an "immediate vicinity" and that the lack of a definition for the term "immediate vicinity" provides the Board with the opportunity to "pick and choose in an arbitrary manner, what is meant by immediate vicinity" depending on the case. The appellants also contend that enforcement of the merger provision constitutes a regulatory taking for which they must be compensated.
 STANDARD OF REVIEW
This Court possesses appellate review jurisdiction of a zoning board of review decision pursuant to (G.L. 1956 §45-24-69 (D), that states
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the finding of the zoning board of review. Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. ZoningBd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, No. 96-224-M.P., Slip Op. at 4. (R.I., filed Jan. 29, 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." (Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping CenterAssociates v. Chase, 574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 THE MERGER PROVISION
The Town of Barrington Zoning Ordinances in Section 185-26 provides for the merger of substandard lots and is commonly referred to as a merger ordinance. See G.L. 1956 § 45-24-38. Merger generally occurs when there are two or more contiguous lots of substandard size which are held in common ownership in order to meet the minimum square footage requirements of a particular zoned district. R.J.E.P. Associates v. Hellewell,560 A.2d 353, 355 (R.I. 1989). Substandard contiguous lots cannot be developed as individual nonconforming lots absent compliance with local zoning ordinance. Id.
Under the plain and unambiguous language of § 185-26, the subject lots merged in 1986. The record indicates that the adjacent lots were in the same ownership on the date of the enactment of the zoning ordinance and that Lot 140, containing less than the requisite 25,000 square feet, constituted an undersized lot under the ordinance.
 THE SPECIAL USE PERMIT
When considering the evidence presented in cases of special use permits, zoning boards of review have the authority to grant a special use permit only when the applicant meets the standards established in the ordinance. Monforte v. Zoning Board of EastProvidence, 93 R.I. 447, 451, 176 A.2d 726, 728 (1962). The standards set forth in the ordinance constitute conditions precedent which must be met before the board may grant a special use permit. Guiberson v. Roman Catholic Bishop, 112 R.I. 252, 259, 308 A.2d 503, 507 (1973).[1] Where the conditions and requirements are satisfied, it is an abuse of discretion to deny the requested special use permit. See Salve Regina College v.Zoning Board of Review of Newport, 594 A.2d 878, 880 (1991).
Under the provisions of § 185-29 of the Town of Barrington Zoning Ordinances, a special use permit may be obtained to unmerge substandard lots of land. The relevant conditions for granting a special use permit are set forth in § 185-73. According to § 185-73, the requirements are as follows:
 "(A) That the public convenience and welfare will be substantially served;
 (B) That it will be in harmony with the general purpose of this ordinance and with the Comprehensive Community Plan;
 (C) That it will not result in or create conditions that will be inimical to the public health, safety, morals, and general welfare of the community; and
 (D) That it will not substantially or permanently injure the appropriate use of the property in the surrounding area or district."
Additionally, pursuant to § 185-29, the Board must make an "additional specific finding that the lots, as unmerged, will be of a size generally in conformance with the size of developed lots in the immediate vicinity."
Our Supreme Court has considered statutes which use words which are undefined. "Legislative definitions are, of course, within the prerogative of such bodies but are by no means essential to giving validity to the language which the legislature employs in setting out conduct which it believes to be contrary to the public health, safety, morality or welfare. Lacking legislative definition, the test is whether the language used is commonly understood by persons of ordinary intelligence."State v. Picillo, 252 A.2d 191, 194 (1969). Zoning ordinances would clearly fall into one or all of the above categories.
Rhode Island General Laws, § 45-24-35 requires that "a zoning ordinance adopted pursuant to this chapter shall provide definitions for such words or terms contained in the ordinance as is deemed appropriate. Words or terms contained in any zoning ordinance, whether or not defined in the ordinance, that are substantially similar to words or terms defined in § 45-24-31
shall be construed according to the definitions provided in this chapter." Neither Section 45-24 et seq. nor the Barrington Zoning Ordinance provides any relevant terms according to which the term immediate vicinity may be construed. If a word that should be defined in a statute is not, then its commonly accepted meaning is applied. Immediate has been defined as "having no object or space intervening, nearest or next: in the immediate vicinity." The Random House Dictionary of the English Language 956 (2nd Ed. 1987). While vicinity is defined as "the area or region near or about a place; surrounding district, neighborhood." Id. at 2119.
The Board determined that the developed lots in the "immediate vicinity" of the subject property were those lots located on the eastern side of New Meadow Road. The appellants believe that the immediate vicinity compromises a wider area, which includes properties located on the western side of New Meadow Road.
This Court, in reviewing factual findings of the Board, is controlled by G.L. 1956 § 45-24-69 (D) which provides that "[t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." This Court therefore "is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Apostolou v. Genovesi,388 A.2d 821, 825 (1978). Furthermore, our Supreme Court has stated that:
 "[i]t is well-settled law in this state that a zoning board of review is presumed to have knowledge concerning those matters which are related to the effective administration of the zoning ordinance. Where it appears from the record that a decision was reached in reliance upon such knowledge, it is considered by this Court to constitute legal evidence sufficient to support a finding." Charles Land Company v. Zoning Board of Review of the City of East Providence, 99 R.I. 161, 166, 206 A.2d 453, 455 (1965) (quoting Monforte v. Zoning Board of Review, 93 R.I. 447, 449, 176 A.2d 726, 727 (1962)).
After a review of the relevant authorities, this Court finds that the term "immediate vicinity," as applicable to the instant matter, refers to those lots located next to the subject property on the eastern side of New Meadow Road. The record clearly evidences that the lots, as unmerged, would not be of a size generally in conformance with the size of developed lots in the immediate vicinity. All the properties located on the eastern side of New Meadow Road have square footage of at least 15,000, while Lot 140 measures only 12,000 square feet. Since the unmerged lots would not generally be in conformance with the lots in the immediate vicinity, the Board's denial of the appellant's application for a special use permit to unmerge their lots was supported by reliable, probative, and substantial evidence of record and did not constitute an error of law.
 RELIEF FROM THE WETLANDS PROVISIONS
Since the proposed residence would be built within 100 feet of wetlands, the appellants further sought a dimensional variance from the setback restrictions of § 185-22. Section 185-22 of the Town of Barrington Zoning Ordinances, entitled "Setback from wetlands and water bodies," states that ". . . no building, structure or sign may be located within one hundred (100) feet of any wetland, water body or stream. . . ." The appellants also applied for a special use permit to construct the residence in a Wetlands Overlay District. Section 185-173, entitled "Application procedures," provides that "[a]ny use that is not specifically prohibited . . ., and which is allowable in the underlying zoning district, but meets the applicability requirements of § 185-169, is allowed in the Wetlands Overlay District, or within one hundred (100) feet thereof, only as a special use. . . ." According to § 185-169,
 "[t]he Wetlands Overlay District shall apply to all new construction or reconstruction or expansion of existing buildings, or new, expanded or modified uses of property within, or within one hundred (100) feet of, the Wetlands Overlay District. Those areas lying within, or within one hundred (100) feet of, the Wetlands Overlay District shall be subject to both this section and the provisions pertaining to the underlying use district in which such areas are located."
Furthermore, the Board could grant the special use permit only if it determined that the structure would be set back at least one hundred feet from the wetland edge. See § 185-174 (A) of Town of Barrington Zoning Ordinances.
The Board possesses the authority to grant a special use permit only when the applicant meets the standards established in the ordinance and the standards set forth in the ordinance constitute conditions precedent which must be met before the Board may grant a special use permit. Monforte v. Zoning Board ofEast Providence, 93 R.I. 447, 451, 176 A.2d 726, 728 (1962);Guiberson v. Roman Catholic Bishop, 112 R.I. 252, 259,308 A.2d 503, 507 (1973). Furthermore, a dimensional variance cannot be granted in a situation in which the use was permitted by way of a special use permit. See Northeastern Corporation v. Town of NewShoreham, 534 A.2d 603 (R.I. 1987) (citing Zammarelli v. Bettie,459 A.2d 951, 954 (R.I. 1983)).
Section 185-169 states that areas lying within 100 feet of a Wetlands Overlay District are subject to both provisions relating to the Wetlands Overlay District and the underlying use district in which the area is located. Section 185-174 further provides that any new development in a Wetlands Overlay District must be located more than 100 feet from any wetlands, while § 185-22 generally states that no building, structure or sign may be located within one hundred feet of any wetland, water body or stream. In their application, the appellants admitted that the proposed residence would be within one hundred feet of the wetlands and, therefore, sought a dimensional variance. However, since the grant of a special exception use is one which creates a conditionally permitted use and a dimensional variance "comes into play only when the project involves a permitted use," the appellants were not entitled to the relief they requested. SeeNewton v. Zoning Board of the City of Warwick, 713.A.2d 239 (R.I. 1998); Northeastern Corporation v. Zoning Board of Review of theTown of New Shoreham, 534 A.2d 603 (R.I. 1987). Since the appellants required both a special use permit to construct the residence and a dimensional variance from the requirements of both § 185-22 and § 185-174, the Board's decision does not constitute an error of law.
 TILE TAKINGS ISSUE
The established doctrine of takings jurisprudence has for years rested upon the proposition that "while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking." Lucas v. South Carolina CoastalCouncil, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 2893, 120 L.Ed. 798, 812 (1992) (citing Pennsylvania Coal Co. v. Mahon,260 U.S. 393, 415 (1922)). A town may regulate the use of property only where the uncontrolled use would be harmful to the public.Annicelli v. Town of South Kingston, 463 A.2d 133, 139 (RI 1983). To determine whether a taking has occurred, the court must analyze "(1) [t]he economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment backed expectations, and (3) the character of the governmental action." Alegria v. Keeney,687 A.2d 1249, 1252 (RI 1997) (citing Penn Central Transportation Co.v. New York City, 438 U.S. 104, 124 (1978).
Appellants rely on Lucus, Annicelli, and Alegria to argue that the Board's decision constitutes a "total regulatory taking of the [appellants'] property without just compensation" and that their property is "being `pressed into some form of public service under the guise of mitigating serious public harm.'" TheLucas Court acknowledged that its holding was limited to the "relatively rare situations" where "no productive or economically beneficial use of the land is permitted." Lucas, 112 S.Ct. at 28. Furthermore, the Annicelli Court stated that their award of compensation was based upon its finding that all reasonable or beneficial use of the property had been rendered an impossibility. Annicelli, 463 A.2d at 139.
In the instant matter, the appellants have not been denied all economically beneficial use of the land. For over eighteen years, the appellants have used the property for their residence and its surrounding yard, a use which will continue despite the denial of their application. It is well recognized that "`the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking.'" Woodland Manor IIIAssociates v. Keeney, 713 A.2d 806, 812 (R.I. 1998) (citingUnited States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 126, 106 S.Ct. 455, 459, 88 L.Ed.2d 419, 426 (1985)). Furthermore, our Supreme Court has recognized that ". . . a concept known as merger, is a valid zoning mechanism governed by the provisions of G.L. 1956 (1988 Reenactment) Chapter 24 of Title 45." Brum v. Conley, 572 A.2d 1332, 1334 (R.I. 1990). It is also well recognized in zoning law that "[a] property owner suffers no confiscation of his property nor is he denied all beneficial use thereof merely because a regulation prevents him from using his property in the most profitable manner possible."Johnson Wales College v. DiPrete, 448 A.2d 1271, 1280 (R.I. 1982) (citations omitted). Accordingly, the impact of the Zoning Board's decision does not "in itself rise to the level of interference with a vested property right." Alegria, 687 A.2d at 1283.
Furthermore, the character of the government action weighs in favor of finding that a taking has not occurred. The government, in this case, has neither compelled "the property owner to suffer a physical "invasion' of his property" nor denied "all economically beneficial or productive use of land," two takings situations that the United States Supreme Court has found to carry special constitutional significance. Alegria, 687 A.2d at 1254 (citing Lucas, 505 U.S. at 1015). Rather, the government has promulgated regulations designed to preserve areas designated by statute to hold special value. See Alegria, 687 A.2d at 12454;see also G.L. 1956 § 2-1-18 ("swamps, marshes and other fresh water wetlands are among the most valuable of all wildlife habitats and are high value recreational areas as well."). The appellants have not argued in this appeal that the town's purposes in applying special regulations to protect wetlands are illegitimate or that the regulations themselves were improperly adopted, mistakenly applied to their property, or otherwise invalid for any reason other than their taking claim. As such, this Court finds the appellants' taking claim must fail.
Accordingly, after reviewing the entire record, this Court finds that the decision of the Barrington Zoning Board of Review was based upon the reliable, probative, and substantial evidence before it and was not affected by error of law. Substantial rights of the appellants have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall prepare an appropriate judgment for entry.
[1] Although this case refers to a "special exception" and not a "special use permit," the terms are synomous. See G.L. 1956 § 45-24-31 (57).