[1] W. Michael Sullivan, now current Director of DEM, has been substituted for Frederick Vincent, the former Acting Director of DEM, pursuant to Super. R. Civ. P. 25(d).
 DECISION
Pasco and Susan Raimondo ("Appellants") appeal from a decision of the Department of Environmental Management ("DEM"), imposing penalties on them for committing seven violations of Regulations for Underground Storage Facilities Used for Petroleum Products and Hazardous Materials ("UST Regulations"). For the reasons set forth below, this Court affirms the decision of DEM. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
Pasco and Susan Raimondo own Pat's Towing, an automobile towing and service station located at 94 Warwick Avenue, West Warwick, Rhode Island. (Admin Hr'g Tr., June 9, 2004, at 36, 38.) Mr. Pasco operates the business, which stores gasoline in underground storage gasoline tanks.Id. at 36, 38, 40. As such, the Appellants are obligated to comply with applicable UST Regulations. See Department of Environmental *Page 2 
Management, Rules and Regulations for Underground Storage Facilities Used for Petroleum Products and Hazardous Materials, Rule 3.01 (2008).
The Office of Compliance and Inspection ("OCI") issued a notice of violation to Pasco and Susan Raimondo on April 9, 2003. (Notice of violation, November 15, 2004, DEM Decision ("Decision") at 20.) This notice followed a compliance inspection of the Raimondo's property ("facility") on June 12, 2001. (Admin. Hr'g Tr., June 9, 2004, at 86.) It cited seven violations of the UST Regulations.[2] Id. at 5-14, 86-93.
Appellants appealed OCI's decision and requested a hearing before the Administrative Adjudication Division of the Department of Environmental Management. The Hearing Officer conducted a hearing on June 9, 2004 with all parties present. Appellants appeared pro se. The following persons testified at the hearing: OCI official Tracey Tyrrell ("Ms. Tyrrell"); DEM representative Richard LeFebvre ("Mr. LeFebvre"); both Appellants; and their employee, Douglas Stardumsky ("Mr. Stardumsky").
At the hearing, Ms. Tyrell, a Supervising Environmental Scientist in the UST Section of OCI, testified that she drafted the Notice of Violation and calculated the *Page 3 
sanction according to the Rules and Regulations of Administrative Penalties, and she addressed each of the violations and penalties she assessed. (Admin. Hr'g Tr., June 9, 2004, at 5-15.) A portion of the total penalties imposed refers to a so-called economic benefit penalty (violation one), the failure to pay registration and late fees. Id. at 10-11. It also includes the average cost of completing the required surveys or tests which had not been completed as required. Ms. Tyrell addressed the manner in which she calculated the penalty for these violations by referring to a penalty matrix. Id. at 11-14. Based upon the matrix, these economic benefit penalties totaled $7307. Id. at 10-15. On cross-examination by Appellant Pasco Raimondo ("Mr. Raimondo"), Ms. Tyrell explained that the facility had five, rather than four tanks because one is compartmentalized. Id. at 21. She testified that OCI considers compartmentalized tanks as two tanks under UST Regulations because they must be treated separately for testing purposes. Id. Ms. Tyrell conceded that there are a number of ways to complete inventory control, but testified that regardless of how it is completed, the daily inventory and monthly reconciliation must be recorded and maintained on-site. Id. at 26-30.
When Mr. Raimondo testified, he attempted to provide explanations for the alleged violations. He asserted that the pump leak detector violation (violation two[3]) was *Page 4 
due to build up of water after a rainstorm which occurred immediately prior to the inspector's visit. (Admin. Hr'g Tr., June 9, 2004, at 40.) He stated that due to construction that occurred in 1993 on the adjacent square, the pumps fill with water during rain storms. Id. at 39. He explained that he keeps a "close eye" on the collectors to make sure that no water gathers in the tanks. Id. Additionally, Mr. Raimondo described the improvements made to the facility in 1992 and 1993, as well as his daily maintenance of the equipment. Id. at 41-42. Aside from conducting daily maintenance, Mr. Raimondo testified that he engages the services of the Kennedy Company to perform repairs. Id. at 42. Mr. Raimondo further testified that he did not realize the facility needed to be tested as a result of the improvements he made. Id. at 41-42, 47. The facility, in fact, did pass an inspection and evaluation of the tank monitoring system and the cathodic inspection system. (Ex. 1, John W. Kennedy Co. Inspection Letter, Oct. 22, 2003; Ex. 2, Wilcox and Barton, Inc. Cathodic Protection Inspection Report, Sept. 30, *Page 5 
2003.) These tests, however, were completed after the issuance of the notice of violation in June 2003.
On cross-examination, Mr. Raimondo suggested that required tests actually had been performed, but he acknowledged that he could not recall the specific years when the tests had been completed. (Admin. Hr'g Tr., June 9, 2004, at 52-58.) Additionally, he was unable to recall whether he had kept or submitted any records of these tests to DEM.[4] Id. When analyzing the evidence, the Hearing Officer did not give great weight to Mr. Raimondo's testimony because she found his "shifting testimony to be of little probative value." (Decision at 7.) The Hearing Officer described each instance in which his answers were "elusive" and "contradictory" before concluding that she did not find his testimony reliable. Id.
During the hearing, Mr. LeFebvre, an environmental scientist at OCI, testified about his June 12, 2001 inspection. According to Mr. LeFebvre, although Mr. Raimondo produced daily inventory records at this inspection, the records were incomplete, and thus were not in compliance with the UST Regulations. (Admin. Hr'g Tr., June 9, 2004, at 69.) Additionally, Mr. LeFebvre confirmed the report that the piping collection sumps were flooded when he inspected them and were therefore in alarm mode. Id. at 78. He further explained on cross-examination that when these sumps are filled with water, the sensors are not able to perform leak detection. Id. at 88-89. When this occurs, potential petroleum leaks may go undetected. Id. at 88. *Page 6 
Appellant Susan Raimondo ("Ms. Raimondo") and Mr. Staradumsky also both briefly testified during the hearing. During her testimony, Ms. Raimondo explained that she does not work at the service station and is not involved with it in any other way. Id. at 35-36. On cross-examination, she admitted that she co-owns the property. Id. at 36. Mr. Staradumsky testified as to his daily inventory checks and the various tests and maintenance he performs daily, but denied keeping a monthly reconciliation. Id. at 62-63.
Following the hearing, the DEM Hearing Officer issued a recommendation to the DEM Acting Director to sustain the notice of violation requiring the Appellants to pay the total sum assessment of $22,307. (Decision at 24.) In her decision, the Hearing Officer analyzed the testimony regarding each violation and specified the amount due under each separate violation. Id. at 10-19. She produced her recommendation in a twenty-five page decision which included her findings of fact and conclusions of law.
The Hearing Officer observed that under the first violation, failure to pay registration fees and associated late fees, [5] Appellants owe $2425. The Hearing Officer found both Appellants liable for the violations. Although Ms. Raimondo is not an *Page 7 
operator of the facility, the Hearing Officer found that she is still responsible for UST Regulation violations as an owner.[6] Id. at 18-19
As to violation two, the Hearing Officer noted Appellants' lack of records for leak monitoring equipment as required by UST Rule 8.13(A). Appellants did not produce those records at the inspection or at the hearing. Id. at 11. The Hearing Officer found that even if she accepted Mr. Raimondo's testimony that he and his employees regularly test and maintain the equipment, Appellants would still be in violation of 8.13(A) because the rule requires the owner/operator to maintain records on-site for the life of the system. Id. at 11. The Hearing Officer relied on Mr. LeFebvre's testimony to find that the piping collection sumps were not kept clean and dry as required by 8.14(D). Id. at 12. The Hearing Officer sustained the Type II Minor violation classification and the assessed penalty of $1250 for violation two.
Finding the evidence of violation uncontradicted, the Hearing Officer sustained the Type II Minor violation and assessment of a penalty of $1250 for violation three. That violation referred to Appellants' failure to have a complete operational survey of the cathodic protection system performed in the year 1999 by a qualified cathodic protection tester and/or failure to maintain testing records, which violated UST Regulations Rule 8.06(B) and 11.02(A)(8).[7] Id. at 13. The Hearing Officer noted that under 8.07(B), *Page 8 
Appellants were required to have the cathodic protection system[8]
tested every three years. Id. It was tested in 1993, but the Appellants were unable to prove that it was tested again in 1996 and 1999. Id. No records of such subsequent tests were provided on the date of inspection nor introduced at the hearing, as required by Rule 11.02(A). Id.
The Hearing Officer sustained the fourth, fifth, and sixth record keeping violations. She found uncontradicted evidence that Appellants did not produce these records at the inspection or at the hearing. She noted the importance of the tests required *Page 9 
by violations four[9] and six[10] in preventing petroleum leaks, the dense development of the surrounding area, and the potential for public harm. The Hearing Officer sustained the categorization of these violations as Type II Moderate violations and the assessment of each as $2500. Id. at 13, 16.
She also sustained violation five and the penalty of $1250 as a Type II Minor violation. That violation sanctioned Appellants for failing to perform monthly testing of *Page 10 
the Continuous Monitoring System and/or maintain testing records for the period June 1999 through June 2001 as is required by Rules 8.13(E) and 11.02(B)(3).[11] Id. at 15.
The Hearing Officer sustained the final violation, failure to maintain daily written inventory records and monthly reconciliation of product stored in the USTs for the period 1999 through June 2001, as required by Rule 11.03.[12] Id. at 17. Noting Mr. LeFebvre's *Page 11 
testimony that the daily inventory records were incomplete, the Hearing Officer found that the daily sheets presented at the inspection were not in compliance with Rule 11.03. Id. Furthermore, the Hearing Officer considered Ms. Tyrell's testimony, which noted the importance to public safety of the monthly reconciliation records. Id. She found that uncontroverted evidence displayed the lack of compliance with not only the daily sheets but also the monthly reconciliation; and thus, she sustained the Type II Major violation and assessed a penalty of $6250.Id. at 18.
The Hearing Officer gave the Acting Director of DEM her recommendation that DEM sustain Appellants' seven violations. She found that the assessed penalties of $22,307 were properly calculated in accordance with the Rules and Regulations for the Assessment of Administrative Penalties and G.L. 1956 § 42-17.6. Id. at 24. The DEM Acting Director adopted the Hearing Officer's recommended decision and notified Appellants of DEM's decision.
Appellants timely appealed the DEM decision to this Court pursuant to G.L. 1956 § 42-35-15. On appeal, Mr. and Ms. Raimondo argue that the UST Regulations are void for vagueness because Mr. Raimondo believed he was maintaining his equipment and business in accordance with the requirements and it remains unclear to him how he did *Page 12 
not comply with the regulations. Additionally, Appellants maintain that the administrative decision is clearly erroneous in light of the evidence. They further argue that the penalties imposed violate § 42-17.6-7
because the penalty exceeds the statutory limit, and the Hearing Officer did not consider the statutorily required factors.
In response, DEM contends that the language in the UST Regulations is straightforward and therefore the regulations are not void for vagueness. Furthermore, DEM asserts that the decision affirming the seven violations should be upheld because it was based on the evidence in the record. Lastly, DEM maintains that the penalty does not violate § 42-17.6-7
because the Rhode Island Water Pollution Control Act specifically authorizes a higher penalty and the Hearing Officer properly considered the required factors.
 II Standard of Review
The court reviews a contested administrative decision pursuant to the Administrative Procedures Act, G.L. 1956 § 42-35-15(g). This section provides that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15(g). *Page 13 
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Johnston Ambulatory Surgical Assocs.v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000) (quoting Barrington Sch.Comm. v. R.I. State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994)). The Rhode Island Supreme Court has defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Town of Burrillville v. R.I. State Labor RelationsBd., 921 A.2d 113, 118 (R.I. 2007). In reviewing an agency decision a "Superior Court trial justice `shall not substitute [his or her] judgment for that of the agency as to the weight of the evidence on questions of fact.'" Interstate Navigation Co. v. Div. of Pub. Utils. Carriers ofR.I., 824 A.2d 1282, 1286 (R.I. 2003) (citing Rocha v. State Pub. Utils.Comm'n, 694 A.2d 722, 725 (R.I. 1997) (quoting § 42-35-15(g))). Accordingly, only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record may the Superior Court reverse. Baker v. Dep't of Employment and TrainingBd. Of Review, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v. CoastalRes. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). However, the Court is free to conduct de novo review of determinations of law made by the agency. Arnold v. R.I. DOL Training Bd. Of Review, 822 A.2d 164, 167
(R.I. 2003) (citing Nolan, 755 A.2d at 805).
Furthermore, the Court must accord greater deference to a DEM decision which adopts the finding its Hearing Officer, who first made fact and credibility determinations after hearing live testimony. See Envtl.Scientific Corp. v. Durfee, 621 A.2d 200, 207-08 (R.I. 1993). Under DEM's two-tiered standard of review, the Court must confer this *Page 14 
deference because "the further away from the mouth of the funnel that an administrative official is when he or she evaluates the adjudicative process, the more deference should be owed to the fact finder." Id. at 208.
 III Discussion A Whether Regulatory Language Is Impermissibly Vague
Appellants argue that the UST Regulations cited in the seven violations offend their procedural due process rights because the regulations are unconstitutionally vague on their face. They excuse Mr. Raimondo's failure to comply with the letter and spirit of the UST Regulations by arguing that he did not understand his obligations under the regulations. Appellants argue that they should not be penalized for Mr. Raimondo's failure to understand the requirements of the regulations because they are vague and confusing. Appellants further argue that Mr. Raimondo made a good faith effort to comply with the regulations, but was unable to do so because they are vague and should be declared void for such vagueness.
The Court rejects this argument. The language of the UST Regulations requires owners and operators of underground storage tank sites to maintain their facilities and keep records on-site of the maintenance and specific tests. The testing requirements — such as those in Rules 8.06(B), 18.3(E), 8.10, and 8.13(F) — state the type of testing that is required, who must perform the test and how often the test must be performed. Rule 11 sets forth the record keeping requirement in clear and unambiguous language. It lists for how long each type of record must be maintained. Appellants contend that these regulations are unconstitutionally vague because Mr. Raimondo did not himself understand them. *Page 15 
To the extent that Appellants based their vagueness argument on Mr. Raimondo's personal inability to understand the regulations, the argument fails. By basing the argument on his personal understanding or lack thereof, Appellants are applying a subjective rather than objective standard to the test for impermissible vagueness. To prevail on their argument, Appellants would have to prove that the language in the regulations cannot be understood by a person of ordinary intelligence.State v. Picillo, 105 R.I. 364, 369, 252 A.2d 191, 194 (1969). This test is not whether Mr. Raimondo understood the regulations, but whether a person of ordinary intelligence would have understood them. The regulations will only be unconstitutional if they are "impermissibly vague in all of [their] applications." State ex rel. Town of Westerly v.Bradley, 877 A.2d 601, 605 (R.I. 2005) (quoting Village of HoffmanEstates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95
(1982)). In particular, regulations resulting in civil penalties are subject to a less stringent test for vagueness because the consequences are less severe and the subject matter is narrower. Village of HoffmanEstates, 455 U.S. at 498-99. Businesses are additionally expected to conduct their activities according to the requirements of regulations and may ask the relevant administrative agency to clarify any discrepancies and provisions they find unclear. Id. at 498. Moreover, regulations that threaten constitutionally protected rights require a more stringent evaluation. Accordingly, the Court will find a regulation unconstitutionally vague only when it forces a person of average intelligence to surmise as to its application and meaning. See Trembleyv. City of Central Falls, 480 A.2d 1359, 1365 (R.I. 1984); Picillo,105 R.I. at 369, 252 A.2d at 194.
In this case, Appellants have failed to demonstrate that any of the violated UST Regulations are so vague as to violate their due process rights. Specifically, UST *Page 16 
Regulations 8.02(A), 8.13(A), and 8.14(D), cited in violation two, provide sufficient guidance with respect to the maintenance of leak monitoring equipment and sumps by laying out detailed requirements regarding the record keeping maintained on-site and the necessary clean and dry condition of the sumps. Similarly, UST Regulations Rule 8.06(B) unambiguously lists the testing requirements for cathodic protection, such as "all sacrificial anode . . . systems must be tested . . . at least every 3 years following the installation date." UST Regulations Rule 8.10 also provides clear testing requirements, such as "[l]ine leak detectors are required to be tested annually in accordance with the manufacturer's requirements and procedures by trained, qualified, personnel." Cited in violation five and six, UST Regulations Rule 8.13(E) and (F) plainly explain that all continuous monitoring systems and alarms must be tested on a monthly basis and leak-monitoring devices are to be tested on an annual basis. Each of the violations of these Regulations also involves a violation of the Rule 11 record keeping requirements. This rule further provides clear requirements as to what type of records the owners and operators must maintain and how long they must keep these records. See, e.g., UST Regulations, Rule 11.02(B)(3) (including in the list of records required to be maintained for a minimum period of three years "[r]ecords of monthly tests of continuous monitoring systems as required in Rules 8.13(E) and 9.16(E)"); 11.03(A)(3) (including in the list of the records required to be permanently maintained on-site "[a]nnual test results of equipment or systems used for leak detection and inventory control"). Based on the language in these regulations, the Court finds that a person of ordinary intelligence can identify the meaning and application of the UST Regulations without conjecture as to its meaning and application. See Trembley, 480 A.2d at 1365 (citations omitted) (finding that a regulation that placed a firefighter on the retirement list *Page 17 
after he or she fails to return to work after a disability period was unambiguous on its face and consequently not unconstutionally vague because it did not force "a person of average intelligence to guess and resort to conjecture as to its meaning"); Picillo, 105 R.I. at 369,252 A.2d at 194 (stating that the court was unable to find that the terms "`gambling,' `playing,' `games of chance,' `other valuable consideration' and `to be used or occupied' are so vague and indefinite as not to be comprehended by a person of ordinary understanding").
The Regulations are sufficiently clear to alert persons of ordinary intelligence of their meaning. If Appellants were unable to understand their obligations under them, they might have contacted DEM to seek a clarification of the points they did not understand See F. Ronci Co.,Inc. v. Narragansett Bay Water Quality Mgmt. Dist. Comm'n, et al.,561 A.2d 874, 877-878 (R.I. 1989) (holding that a water discharge regulation was not void for vagueness because it was "sufficiently clear to alert business persons of ordinary intelligence" of their responsibilities, and even if the language was somewhat ambiguous, "resort to the administrative process could clarify the meaning of [the] definition"). Appellants' violations of the testing and record keeping requirement display their lack of diligence to comply with these regulations prior to the notice of violation, not the regulation's vagueness. Thus, the Hearing Officer's decision was not affected by an error of law or in violation of constitutional provisions.
 B Hearing Officer's Determination of the Evidence
Appellants further assert that the decision is clearly erroneous because the Hearing Officer disregarded Mr. Raimondo's testimony regarding the substantial improvements, daily inventory logs, and Kennedy Company's maintenance. They also maintain that the decision *Page 18 
on the issue of the sumps that were filled with water was clearly erroneous because the Hearing Officer rejected Mr. Raimondo's testimony and did not order a re-inspection of the sump. Additionally, Appellants contend that the decision to sustain the seventh violation is clearly erroneous because Mr. Raimondo maintained daily records and could have kept monthly reports upon request. Finally, they argue that the Hearing Officer's determination of the five tanks on the property, rather than four, was arbitrary and capricious because, they claim, Ms. Tyrrell testified that there were four tanks at the facility.
These arguments are without merit. Rhode Island courts afford great deference to agency decisions under the "arbitrary and capricious" standard of review. Goncalves v. NMU Pension Trust, 818 A.2d 678, 682-83
(R.I. 2003). Accordingly, this Court will uphold the administrative decision unless the officer did not act within her authority and her decision was not "rational, logical, and supported by substantial evidence." Id. (citing Doyle v. Paul Revere Life Insurance Co.,144 F.3d 181, 184 (1st Cir. 1998)). Furthermore, a court will not substitute its judgment for that of the agency when evaluating the credibility of testimony. Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988).
In the instant case, the Hearing Officer found that the evidence proved the Appellants' seven violations of UST Regulations. She identified the evidence on which she relied, including Ms. Tyrell's and Mr. LeFevbre's testimony. She made credibility findings and rejected the testimony of Mr. Raimondo. The Hearing Officer noted the lack of records produced by Mr. Raimondo and his contradictory answers. (Decision at 7.) This Court will not substitute its judgment for that of the Hearing Officer on the credibility of the witnesses or the weight that she gives to the testimony and other evidence. See Costa, 543 A.2d at 1309. *Page 19 
Specifically, the Hearing Officer sustained the first violation after finding that OCI proved by a preponderance of the evidence that Respondents failed to register the USTs and pay the associated late fees. (Decision at 22, 23.) With regards to the second violation, she relied on Mr. LeFevbre's testimony that the leak monitoring maintenance records were not produced at the inspection. Id. at 11. She also noted that a certified letter and the notice of violation both requested the production of the records, but Appellants did not respond with the documents. Id. Additionally, no records were presented at the hearing.Id. Thus, the Hearing Officer found that even if she did accept Mr. Raimondo's testimony that he regularly maintains his equipment, she would nevertheless sustain the violation because it is based only the lack of records. Id. Moreover, she accepted Mr. LeFebvre's testimony that the piping collection sumps were in violation of UST Regulations Rule 8.14(D) because they were not clean and dry during the inspection. Id. at 12.
In sustaining the third violation, the Hearing Officer considered that Appellants failed to produce any testing records of the sacrifical anode system at the inspection pursuant to UST Regulations Rule 8.06(B). Id. at 13. Moreover, Appellants failed to produce these records in response to the certified letter or at the hearing. Id. She additionally sustained the fourth violation because Mr. LeFevbre's testimony established that Appellants failed to produce any records pertaining to the line leak detectors during the inspection. Id. at 14. She further noted that Mr. Raimondo's testimony regarding this violation was "equivocal, at best" and eventually admitted that he did not submit any records of annual testing of the facility's line leak detection system. Id. The Hearing Officer sustained the fifth violation because she found that even if Mr. Raimondo's testimony regarding the performance of monthly testing *Page 20 
was reliable, Appellants still violated the record keeping requirement.Id. at 15. Appellants did not produce these records in response to the certified letter or at the hearing. Id.
She also sustained the sixth violation because Mr. LeFebvre's testimony established that the line leak monitoring device testing records were not produced at the inspection. Id. at 16. Furthermore, Appellants failed to produce these records in response to the certified letter or at the hearing. Id. Finally, the Hearing Officer sustained the seventh violation as a result of the lack of monthly reconciliation and Mr. LeFevbre's testimony that the daily inventory records were incomplete and monthly reconciliation was not properly performed. Id. at 17. Thus, the Hearing Officer based her decision on each violation on the competent evidence of the record. Accordingly, the Hearing Officer's decision was not in excess of statutory authority, and her decision was not clearly erroneous.
With respect to the determination of the number of tanks on the property, Ms. Tyrell explained at the hearing that under UST Regulations, a compartmentalized tank must be treated as two. (Admin. Hr'g Tr., June 9, 2004, at 21.) Therefore, she testified, five tanks exist at the facility. Id. Furthermore, after Mr. Raimondo's repetitive questioning of Ms. Tyrell as to this issue, DEM stipulated that there are four tanks in the ground but did not concede the point that under UST Regulations, the compartmentalized tank must be registered as two separate tanks, bringing the total to five. Id. In accepting Ms. Tyrell's testimony on this point, the Hearing Officer based her decision that there were five tanks on reliable, probative and substantial evidence. *Page 21 
 C Penalties Imposed
Appellants further argue that the penalties imposed violate § 42-17.6-7, which allows a penalty greater than $1000 per violation only if authorized by statute. They additionally aver that the Hearing Officer did not consider the factors for computing penalties as required by §42-17.6-6. The Court rejects both of these arguments.
Although § 42-17.6-7, as Appellants claim, sets a limit for administrative penalties when not otherwise authorized by statute, the UST Regulations were promulgated under Rhode Island General Laws 1956 § 46-12, the Water Pollution Act, which specifically authorizes a higher penalty of up to $25,000 for each day during which the violation occurred. Sec. 46-12-13. Thus, the assessed penalties does not violate §42-17.6-7.
The Hearing Officer was also required to consider the factors listed in § 42-17.6-6 when determining the amount of each penalty. Generally, administrative agencies have significant latitude when imposing penalties. Am. Jur. 2d Administrative Law § 453 (2010). The agency has "special competence" to determine appropriate penalties. Id. "Where there is a sufficient basis for the orders issued, it is no concern of the court that other regulatory devises might be more appropriate, or that less extensive measures might suffice." Id. Accordingly, this Court does not substitute its own judgment on sanctions for that of the department, even if it may draw a contrary inference from the evidence. Rocha,694 A.2d at 726 (citing Sartor v. Coastal Res. Mgmt. Council,542 A.2d 1077, 1083 (R.I. 1988)). The Rhode Island Supreme Court has further stated that the Superior Court may not decide whether the department chose the right sanctions or penalties, but rather whether the *Page 22 
sanctions were based on "any competent record evidence." Id.; see alsoBroad St. Food Mkt., Inc. v. U.S., 720 F.2d 217, 220 (1st Cir. 1983) (finding that a court should review agency sanctions in light of the administrative record to judge whether "the sanction is `unwarranted in law . . . or without justification in fact'" (citations omitted)).
Section 42-17.6-6 guides the agency to "include, but not be limited to, the [twelve listed factors] to the extent practicable in his or her considerations." These factors include "[t]he actual and potential impact on public health," "[t]he actual and potential damages suffered, and actual or potential costs incurred, by the director, or by any other person," and "[t]he public interest." Sec. 42-17.6-6(a), (b), (c). Thus, OCI has substantial discretion in assessing penalties, and the Court may only review an agency decision upholding such penalties for lack of any competent evidence. See Rocha, 694 A.2d at 726. In her detailed recommendation, the Hearing Officer explicitly considered a number of factors, including the importance of properly functioning line leak detectors and record keeping to detect potential leaks, the dense development of the area, and the potential for public harm. See, e.g., Decision at 14, 17-18. Accordingly, the Court finds that the penalties are based on competent evidence; therefore, the penalties do not constitute an abuse of discretion or an error of law, and substantial rights of the Appellants have not been violated.
 III Conclusion
After a review of the entire record, this Court finds that the decision of DEM is supported by reliable, probative, and substantial evidence and is not affected by error of law. The administrative decision appealed from was neither arbitrary nor capricious and did not constitute an abuse of discretion. Appellants' substantial rights have not been prejudiced. *Page 23 
For the reasons above, this Court affirms DEM's decision sustaining the seven UST Regulation violations and the assessed penalties and denies the appeal. Counsel shall submit the appropriate judgment for entry.
[2] These violations are listed as: (1) Failure to pay registration fees and associated late fees; (2) Failure to maintain and operate the piping collection sumps and leak monitors in accordance with the UST Regulations; (3) Failure to have a complete operational survey of the cathodic protection system performed in the year 1999 by a qualified cathodic protection tester and/or failure to maintain testing records in violation of UST Regulations, Rule 8.06(B) and 11.02(A)(8); (4) Failure to procure the services of a qualified person to perform annual testing of the line leak detectors for the USTs at the facility as well as failure to maintain such testing records for the years 1994-2001; (5) Failure to perform monthly testing of the Continuous Monitoring System (CMS) and/or maintain testing records for the period June 1999 through June 2001 as is required by Rules 8.13(E) and 11.02 (B)(3); (6) Failure to procure the services of a qualified person to perform annual testing of the Veeder Root ILS 350 CMS and/or maintain testing records for the period 1994-2001 as required by Rule 8.13(F) and 11.02(A)(3); and (7) Failure to maintain daily written inventory records and monthly reconciliation of product stored in the USTs for the period 1999 through June 2001 as required by Rule 11.03.
[3] Violation two cites the failure to maintain and operate the piping collection sumps and leak monitors in accordance with the UST Regulations. This violation cites UST Regulations Rules 8.02(A), 8.13(A), and 8.14(D). Rule 8.02 provides the following:
 "8.02 General Operations and Maintenance:
 (A) All USTs shall be maintained and operated by trained personnel and in compliance with the applicable national codes of practice for the handling and storage of petroleum or hazardous materials as listed in Appendix B."
Rule 8.13(A) provides that:
 "8.13 Operation of Leak Monitoring Equipment:
 (A) Leak monitoring devices shall be installed, calibrated, operated and maintained in accordance with the manufacturer's instructions, including routine maintenance and service checks for operability of running conditions. All records pertaining to the equipment manufacturer, warranties, maintenance requirements, repairs, maintenance, and testing shall be maintained on-site for the life of the system or at an alternate location approved by the Director in writing."
Rule 8.14 (D) requires that:
 "8.14 Spill Containment and Overfill Protection:
 ***
 (D) Sumps: Piping collection and transition sumps, submersible pump head containment structures, and dispenser pans/sumps, where existing, shall be maintained such that all penetration fittings and entry boots are in good condition, all sensors are secured in an upright position and located at least one inch below the lowest penetration fitting or entry boot, and are kept clean and dry."
[4] These tests and records include the cathodic protection survey, CMS monthly testing, annual leak line detection, monthly product inventory control records, and monthly reconciliation records.
[5] Violation one cites UST Regulation Rule 6.10 and 6.13, which require the following:
 "6.10 Registration Fees: All facility owner/operators shall pay to the Department an annual registration fee of seventy five dollars ($75.00) for each underground storage tank required to be registered at the facility.
 ***
 "6.13 Late Fees: Owners/operators who fail to pay a registration fee within the specified time frame shall be subject to a late fee charge of $35.00 per tank per year."
[6] The Hearing Officer found that under Rule 3 Applicability, owners, as well as operators, were responsible for violations of UST Regulations. She found in pertinent part: "3.01 General Applicability: Unless otherwise noted, these regulations apply to . . . persons who owned or operated such facilities after May, 1985."
[7] Rule 8.07(B) provides that:
 "8.07 Cathodic Protection:
 * * *
 "(B) All UST systems equipped with cathodic protection must be inspected and tested for proper operation by a qualified cathodic protection tester in accordance with the following requirements:
 "(1) . . .
 "(2) All sacrificial anode (galvanic or sti-P3) systems must be tested within 6 months of installation or repair, at least every 3 years following the installation date, and whenever construction or maintenance in the area of the structure occurs, in order to determine that the tank-to-soil potential reading relative to copper is -850 millivolts or more negative. "(3) The criteria used to determine whether a cathodic protection system provides adequate cathodic protection must be in accordance with a nationally recognized code of practice listed in Appendix B.
 "(4) . . ."
Rule 11.02(A)(8) requires that:
 "Rule 11.02 Records: All owners/operators of UST facilities shall maintain on the facility premises or at an alternate location approved by the Director, for the period of time specified below, records of the following:
 "(A) Permanent Records: The following shall be maintained for three years beyond the operational life of the facility: ***
 "(8) All records pertaining to the operation and maintenance of approved corrosion protection methods as required in Rule 8.05 and 8.06."
[8] The record has only defined these technical systems through the UST Regulations and does not explain them further.
[9] Violation four is the failure to procure the services of a qualified person to perform the annual testing of the line leak detectors for the USTs at the Facility as well as failure to maintain such testing records for the years 1994-2001 as required by Rules 8.10 and 11.02(A)(3). Rule 8.10 requires that:
 "8.10 Line Leak Detectors: All underground storage tanks at existing facilities that are equipped with pressurized piping are required to have been fitted with an approved line leak detection system by May 8, 1987. Line leak detectors are required to be tested annually in accordance with the manufacturer's requirements and procedures by trained, qualified personnel. Operation of a pressurized piping system with a defective or missing line leak detector is prohibited."
Rule 11.02(A)(3) provides the following:
 "11.02 Records: All owners/operators of UST facilities shall maintain on the facility premises or at an alternate location approved by the Director, for the period of time specified below, records of the following:
 "(A) Permanent Records: The following shall be maintained for three years beyond the operational life of the facility:
 ***
 "(3) Annual test results of equipment or systems used for leak detection and inventory control."
[10] Violation six cites the failure to procure the services of a qualified person to perform annual testing of the Veeder Root ILS 350 CMS and/or maintain testing records for the period 1994 to 2001 as required by Rule 8.13(F) and 11.02(A)(3). Rule 8.13(F) requires the following:
 "8.13 Operation of Leak Monitoring Equipment:
 ***
 "(F) All leak-monitoring devices shall be inspected, calibrated and tested annually to ensure proper operation. Such testing must be performed by trained, qualified persons. Records of such tests shall be maintained in accordance with Rule 8.13(A) and Rule 11."
[11] Rule 18.3(E) reads as follows:
 "18.3 Operation of Leak Monitoring Equipment:
 ***
 "(E) All continuous monitoring systems and alarms shall be tested by the owner/operator on a monthly basis to ensure that they are operating effectively. Records of such tests shall be maintained in accordance with Rule 11 Maintaining Records."
Rule 11.02(B)(3) requires that:
 "11.02 Records: All owners/operators of UST facilities shall maintain on the facility premises or at an alternate location approved by the Director, for the period of time specified below the following:
 ***
 "(B) Routine Record-keeping: The following records shall be maintained for a minimum period of three years from the date made, or for such longer periods as required by the Director in the resolution of enforcement actions:
 ***
 "(3) Records of monthly tests of continuous monitoring systems as required in Rules 8.13(E) and 9.16(E)."
[12] Rule 11.03 states the following:
 "11.03 Inventory Record-keeping and Leak Reporting: Inventory record keeping and leak reporting are to be conducted as follows:
 "(A) Inventory volume measurements for regulated substance inputs, withdrawals, and the amount still remaining in the tank are recorded each operating day;
 "(B) The equipment is capable of measuring the level of product over the full range of the tank's height to the nearest one-eighth of an inch;
 "(C) The regulated substance inputs are reconciled with delivery receipts by measurement of the tank inventory volume before and after delivery;
 "(D) Deliveries are made through a drop tube that extends to within six (6) inches of the tank bottom;
 "(E) Product dispensing is metered and recorded within the local standards for meter calibration or an accuracy of six (6) cubic inches for every five (5) gallons of product withdrawn;
 "(F) The measurement of any water level in the bottom of the tank is made to the nearest one-eighth of an inch at least once a month
 "(G) If inventory record keeping indicates a discrepancy of 1% or more of the flow-through plus 130 gallons on a monthly basis, then the owner/operator shall report such discrepancy in accordance with Rule 12 Leak and Spill Response.
 "(H) Any unusual occurrences that might affect the inflow, outflow, or volume on hand, shall be recorded each operating day, along with any adjustments that were made to the records."